UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| PEOPLE SOURCE STAFFING PROFESSIONALS, L. L. C. | CASE NO. 3:19-CV-00430 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| ANNA ROBERTSON, ET AL. | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a compound motion to strike, to dismiss for failure to state a claim upon which relief can be granted, and for hearing prior to trial, filed by defendants, Will Source, Inc., Wayne Williamson, Kathy Williamson, and Anna Robertson. [doc. # 31]. The motion is opposed. As detailed below, it is recommended that the motion to dismiss be GRANTED-IN-PART and DENIED-IN-PART. It is further ordered that the motion to strike is DENIED, and the motion for hearing is GRANTED-IN-PART and DENIED-IN-PART.

## Background

On April 5, 2019, People Source Staffing Professional, L.L.C., ("People Source") filed the instant complaint and request for preliminary and permanent injunctive relief against defendants, Anna Robertson, Wayne Williamson, Kathy Williamson, Shauna Bailey, and Will Source, Inc. ("Will Source"). In response to court order [doc. # 22] and a motion for more definite statement [doc. # 13], People Source filed a first amended complaint on May 17, 2019, which by all appearances, superseded the original complaint. (1st Amend. Compl. [doc. # 24]). Accordingly, the following recitation of pertinent facts is taken from the latter, operative pleading.

People Source is in the business of providing temporary and direct hire staffing for its

employer customers. (1st Amend. Compl., ¶ 12). On February 1, 2016, People Source acquired its two Louisiana locations in Monroe and Ruston from Diversity One, Inc., the predecessor by merger with Will Source, an entity wholly owned by Wayne Williamson, and his wife, Kathy Williamson. *Id*., ¶ 14. To meet its customers' service expectations and needs, People Source developed and maintained working relationships and substantial goodwill with its employer customers, and its temporary staff. *Id*., ¶ 15. Because of the competitive nature of its business, People Source takes all reasonable efforts to shield its trade secrets and other confidential and proprietary information, such as, pricing structure, sales techniques, sales strategies, bid proposals, contracts, budget proposals, business records, customer lists, etc. *Id*., ¶ 16. People Source's trade secrets and other confidential and proprietary information are known only to select People Source employees who require high-level access. *Id*., ¶ 19.

On July 14, 2016, five months after People Source acquired its Monroe and Ruston offices from Will Source, it hired Anna Robertson, the daughter of Wayne and Kathy Williamson, at their suggestion. *Id*., ¶ 26. People Source hired Robertson as its area manager for Monroe and Ruston. *Id*. As area manager, Robertson had access to all of People Source's customer-specific employment and staffing information. *Id*., ¶ 28. Robertson's hire coincided with Kathy Williamson's last day as an employee with People Source. *Id*., ¶ 27.

On May 1, 2017, People Source promoted Robertson to regional vice-president for its northeast region, which included Louisiana, Tennessee, and Arkansas. *Id*., ¶ 31. In her role as regional vice-president, Robertson had access to all of People Source's customer-specific employment, staffing, and financial information. *Id*., ¶ 34.

On March 15, 2019, Robertson, without any advance notice, emailed People Source her resignation letter, effective immediately. *Id*., ¶ 37. Within the hour of Robertson's resignation, all of People Source's employees in its Louisiana office(s) resigned en masse. *Id*., ¶ 39.

Robertson is presently employed by Will Source, a direct competitor of People Source, with offices in Monroe and Ruston. *Id*., ¶ 41.

As part of People Source's acquisition of the Monroe and Ruston locations from Will Source's predecessor, Diversity One, Inc., People Source entered into a Consulting Agreement with Williamson Consulting Group, L.L.C. ("WCG"), of which Wayne Williamson is a principal. *Id*., ¶ 42. The Consulting Agreement provided that WCG would serve as a broker and consultant for future acquisition projects and to refer customers to People Source. *Id*., ¶ 44. The Consulting Agreement included certain non-disclosure, non-recruitment, non-solicitation, and non-competition clauses. *Id*., ¶¶ 45-51.

As part of People Source's acquisition of the Monroe and Ruston locations from Will Source's predecessor, Diversity One, Inc., People Source entered into an Employment Agreement with Kathy Williamson to provide management at the two locations until People Source hired a new area manager. *Id*., ¶ 52. The Employment Agreement included certain non-disclosure provisions. *Id*., ¶¶ 53-55.

On March 3, 2016, People Source hired Shauna Bailey. *Id*., ¶ 56. At the time of her hire, Bailey entered into a Louisiana Non-Compete and Non-Solicitation Agreement with People Source. *Id*., ¶ 57. As its name suggests, the agreement included certain non-compete and non-solicitation clauses. *Id*., ¶¶ 58-64.

People Source alleges that Robertson, Wayne Williamson, Kathy Williamson, and Will Source, acting through its owners and corporate officers, hatched a plan in October 2018 to launch a coordinated effort to poach and misappropriate all of People Source's operations in Louisiana. *Id*., ¶ 65. Shortly thereafter, these defendants brought Bailey into the conspiracy. *Id*. The purpose of the conspiracy was to use all of People Source's trade secrets and confidential business information to bring Will Source into existence as a competitor to People

3

Source. *Id*., ¶ 69. In late 2018-2019, Robertson copied all of People Source's trade secrets and other confidential business information relating to its business in Louisiana. *Id*., ¶ 76.

People Source asserted nine causes of action against varying defendants, as follows:

1) Specific Performance against Kathy Williamson, Wayne Williamson, and Bailey;

2) Breach of Contract against Kathy Williamson, Wayne Williamson, and Bailey;

3) Violation of the Louisiana Uniform Trade Secrets Act against all defendants;

4) Violation of the Louisiana Unfair Trade Practices Act against all defendants;

5) Unjust Enrichment against Robertson;

6) Breach of Fiduciary Duties against Robertson and Bailey;

7) Defamation against all defendants

8) Conspiracy to Commit Fraud against all defendants

9) Injunctive Relief against all defendants.

*Id*., ¶¶ 119-195.

People Source seeks compensatory damages, preliminary and injunctive relief, plus reasonable attorney's fees.

On June 14, 2019, defendants, Will Source, Wayne Williamson, Kathy Williamson, and Robertson filed the instant motion to strike, to dismiss, and for hearing. People Source filed its opposition brief on July 5, 2019. Movants did not file a reply, and the time to do so has lapsed. *See* Notice of Motion Setting [doc. # 32]. Thus, the matter is ripe.

## Analysis

**I.  Motion to Strike**

Motions to strike are governed by Rule 12(f), which authorizes a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are disfavored and infrequently

granted." *U.S. v. Cushman & Wakefield, Inc*., 275 F. Supp.2d 763, 767 (N.D. Tex. 2002) (*citing Augustus v. Board of Public Instruction of Escambia County, Florida*, 306 F.2d 862, 868 (5th Cir. 1962)). As the Fifth Circuit has noted:

> [p]artly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. * * * It is a drastic remedy to be resorted to only when required for the purpose of justice. * * * **The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy**.

*Augustus*, 306 F.2d at 868 (citing *Brown v. Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953) (emphasis added).

Furthermore, when there is no showing of prejudicial harm, the court should not determine disputed and substantial questions of law upon a motion to strike. *Augustus, supra*.

Movants contend that various paragraphs of the amended complaint should be stricken as redundant, immaterial, impertinent, or scandalous. The court will address each challenged paragraph (or groups of paragraphs), in turn.

a) <u>Employee Handbook, ¶¶ 20 & 21 and Exh. 24-1</u>

Movants argue that references to an employee handbook are immaterial because 1) Wayne Williamson was never an employee of People Source; and 2) there are no allegations that Wayne Williamson or Robertson ever received the handbook or signed it.

People Source contends that Robertson and Kathy both worked for People Source, and therefore, were aware of the handbook and its contents.

The court finds that movants have not demonstrated that the handbook has no possible relation to the controversy. The handbook tends to show that at least some of the defendants knew or should have known about the sensitive nature of People Source's trade secrets and confidential information. Moreover, movants have not shown that they will suffer any

cognizable harm as a result of the handbook allegations.

    b) <u>Williamson Consulting Agreement, ¶¶ 42-51 and Exh. 24-9</u>

Movants apparently argue that because People Source does not state a claim for relief against Wayne Williamson for reasons detailed in their motion to dismiss, the allegations relating to the Williamson Consulting Agreement should be stricken. However, movants' basis for seeking to strike the Agreement presents a question of law. Therefore, the propriety of the allegations should be addressed in the context of movants' motion to dismiss. *See Augustus, supra*. In the interim, movants have not demonstrated that the allegations have no relation to the controversy, or that they will suffer cognizable prejudice.

    c) <u>Poach and Misappropriate, ¶ 65</u>

Movants take issue with People Source's allegation that defendants "hatched a plan and launched a coordinated effort to poach and misappropriate the entirety of People Source's operations in Louisiana." Movants argue that allegations of "poaching" and "misappropriat[ing]" are immaterial to plaintiff's suit because such claims are not cognizable under Louisiana law. However, plaintiff is not asserting claims for poaching and misappropriation. Rather, it simply is describing movants' alleged conduct. Accordingly, movants have not met their Rule 12(f) burden.

    d) <u>Lease Conversation Between Wayne and Third Party, ¶¶ 86-88</u>

In March 2010, Wayne Williamson had a conversation with a third party in which he stated that he had People Source right where he wanted it because he intended to use his leases with People Source as bargaining power to buy People Source's Louisiana operations. (1st Amend. Compl., ¶ 87-88). Williamson also asked the third party to provide him with a People Source service agreement so he could use it with Will Source's operations. *Id*.

Movants argue that the foregoing conversation is not material or relevant to People Source's claims because it does not suffice to show the requisite ill intent to support those claims. Be that as it may, these paragraphs do not represent the only allegations against Williamson. Moreover, it certainly cannot be said that the allegations have no possible relation to the controversy.

e) March 18, 2019, Conversation between Kathy Williamson and Albritton, ¶ 89

Movants argue that because the conversation occurred after Robertson resigned and after Kathy Williamson's non-compete and non-solicitation provisions had terminated, the allegation is immaterial and irrelevant. However, the allegation that Kathy Williamson attempted to poach People Source employees is relevant to plaintiff's argument of concerted action by defendants against plaintiff. Movants' contention that the provision, by itself, is insufficient to establish the degree of culpability required to support plaintiff's claims misses the mark. The allegation certainly is related to the controversy. Moreover, movants will not suffer cognizable prejudice.[1]

f) Party, Prayer, et al., ¶¶ 96-99

Movants assert that references to a party and a prayer led by Wayne Williamson are irrelevant, immaterial, impertinent, and scandalous. The court disagrees. The paragraphs support plaintiff's claims that defendants schemed to misappropriate its business interests in the locality. Movants have not made the requisite showing to strike these paragraphs.

g) Using Plaintiff's Information to Profit Will Source, ¶ 104

---

[1] It is worth emphasizing that juries ordinarily do not see pleadings. *Arch Chemicals, Inc. v. Radiator Specialty Co.*, 653 F. Supp.2d 1099, 1109 (D. Or.2009). Moreover, striking an allegation does not make the pleading disappear from the electronic court record.

Movants argue that after defendants terminated their relationship with People Source they were not prohibited from soliciting People Source's customers. Needless to say, this paragraph is related to plaintiff's claims against defendants. Whether plaintiff's claims against defendants remain viable is an issue beyond the scope of a Rule 12(f) motion to strike. *See Augustus, supra*.

**II.     Motion to Dismiss**

   a)     12(b)(6) Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the

8

court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Furthermore, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (unpubl.) (citations and internal quotation marks omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958). The complaint need not even "correctly specify the legal theory" giving rise to the claim for relief. *Gilbert, supra*.[2] Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. In addition, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Rule 9(b) requires that circumstances constituting fraud or mistake be alleged with particularity. Fed.R.Civ.P. 9(b). The particularity demanded by Rule 9(b) supplements Rule 8(a)'s pleading requirement. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Allegations of fraud under Louisiana law asserted in federal court implicate the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *Conerly Corp. v. Regions Bank*, 2008 WL 4975080 (E.D. La. Nov. 20, 2008). However, "[m]alice, intent, knowledge, and other conditions of a

---

[2] "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

9

person's mind may be alleged generally." Fed.R.Civ.P. 9(b). What constitutes sufficient particularity for Rule 9(b) varies with the facts of each case. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992). At minimum, however, Rule 9(b) requires a plaintiff pleading fraud to "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-565 (5th Cir. 2002) (quoted sources and internal quotation marks omitted). Nonetheless, the "'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)." *Grubbs*, 565 F.3d at 190.

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

    b)    <u>Discussion</u>

        1)    *All Tort, Restitutionary, or Requests for Relief beyond LUTSA*

Movants contend that the Louisiana Uniform Trade Secrets Act ("LUTSA"), Louisiana Revised Statute §§ 51:1431, *et seq.*, preempts and displaces all other remedies for misappropriation of a trade secret. The pertinent provision provides that,

> A. This Chapter displaces conflicting tort, restitutionary, and other laws of this state pertaining to civil liability for misappropriation of a trade secret.

10

>B. This Chapter does not affect:
>(1) contractual or other civil liability or relief that is not based upon misappropriation of a trade secret, or
>(2) criminal liability for misappropriation of a trade secret.

La. R. S. § 51:1437.

However, the Fifth Circuit has recognized that § 1437 "does not apply to contractual duties or to 'duties imposed by law that are not dependent upon the existence of competitively significant secret information, such as an agent's duty of loyalty.'" *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 158 (5th Cir.2018) (citation omitted). Furthermore, if confidential information is not a trade secret, then a cause of action remains under Louisiana law. *Id*.

Upon review of the extant pleading and briefs, the court is unable to determine whether all of the information allegedly appropriated by defendants constitutes a trade secret as required to trigger § 1437's preemptive effect. Moreover, by its terms, § 1437 only displaces "conflicting" provisions. Movants have not demonstrated any conflict between LUTSA and plaintiff's other theories of recovery.

### 2) *Conspiracy to Commit Fraud*

Under Louisiana law,[3] the elements of a claim for contractual fraud include:

>(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) that the error induced by the fraudulent act relates to a circumstance that substantially influenced the victim's consent to the contract.

*Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P.*, 689 F.3d 380, 388 (5th Cir.2012) (citation and internal quotation marks omitted).

---

[3] Here, neither side contests that the substantive issues raised by defendants' motion are governed by Louisiana law. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed).

Similarly, the elements of a claim for delictual fraud or intentional misrepresentation include: "(a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury." *Guidry v. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999) (citations omitted).

Also, to set forth a claim for negligent misrepresentation:

(1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty, which can occur by omission as well as by affirmative misrepresentation; and (3) the breach must have caused damages to the plaintiff based on the plaintiff's reasonable reliance on the misrepresentation.

*Kadlec Medical Center v. Lakeview Anesthesia*, 527 F.3d 412, 418 (5th Cir. 2008) (citation omitted) (citation omitted); La. Civ. Code Arts. 2315-2316.

Movants argue that the misrepresentation or suppression of the truth must be made to the aggrieved party, i.e., People Source. Therefore, plaintiff's allegations that defendants made false statements to People Source's customers, vendors, and service providers do not suffice to state a fraud claim.

However, fraud also can occur by omission. At minimum, plaintiff has alleged facts to suggest that, as employees of People Source during the pertinent period, Robertson and Bailey owed People Source a duty to disclose the circumstances of their scheme to appropriate People Source's business, and the steps that were then underway to utilize People Source's confidential information to make that happen. It certainly is plausible that if defendants had disclosed the scheme to People Source before it came to fruition, then People Source would have taken steps to thwart it, such as restricting defendants' access to its proprietary and confidential information.

In another section of their brief, movants suggest that plaintiff failed to meet the elements for a civil conspiracy. In Louisiana, civil conspiracy is not itself an actionable tort. *Doe v. Mckesson*, 922 F.3d 604, 610 (5th Cir.2019) (citation omitted). Instead, liability is imposed via

12

the underlying unlawful act. *Id*. Thus, to impose liability for a civil conspiracy, plaintiff must prove that "(1) an agreement existed with one or more persons to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in plaintiff's injury; and (4) there was an agreement as to the intended outcome or result." *Id*. Conspiracy may be inferred from the knowledge of an alleged co-conspirator of the impropriety of the actions of the other co-conspirators. *Id*.

In this case, People Source has alleged sufficient facts to support a conspiracy by defendants to defraud People Source. *See* 1st Amend. Compl.

*3)* *Specific Performance and Breach of Contract Claims against Wayne Williamson*

Movants argue that plaintiff's claims for specific performance and breach of contract against defendant, Wayne Williamson, stem from the Consulting Agreement. By its terms, however, the Consulting Agreement is between People Source and Williamson Consulting, L.L.C., which Wayne Williamson signed solely on behalf of the limited liability company ("L.L.C.").

The court observes that the personality of a juridical person is distinct from that of its members. La. Civ. Code Art. 24. Thus, the personalities of an L.L.C. and its members are wholly separate by law. *Nunez v. Pinnacle Homes, L.L.C.*, 180 So.3d 285, 289 (La. 2015). . Indeed,

> [i]n allowing for limited liability companies, the legislature clearly intended to promote business in the state by limiting personal liability for some debts incurred or acts performed on behalf of business entities. Thus, the legislature intended to shield individual members, managers, and employees of an L.L.C. from liability, albeit with certain exceptions. To that end, the legislature established "narrowly defined circumstances" under which individual members of an L.L.C. may be subject to individual personal liability.

*Nunez, supra* (internal citations omitted).

The liability protection afforded to members, managers, employees, and agents of an L.L.C., are set forth *exclusively* in Louisiana Revised Statute 12:1320, which provides that,

> A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.
> B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.
> C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.
> D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

La. R. S. § 12:1320.

In other words, the statute recognizes exceptions to L.L.C. member liability protection in three instances: fraud, breach of professional duty, or other negligent or wrongful acts by the member. *See Ogea v. Merritt*, 130 So.3d 888, 906 (La. 2013); *Syzygy Const., LLC v. McKey*, 156 So.3d 763, 766 (La. App. 4th Cir. 2014).

In response to movants' motion, plaintiff has not established that its claims for specific performance and breach of contract against Wayne Williamson meet any of the three recognized exceptions for L.L.C. member liability.[4] Accordingly, plaintiff has not stated a claim for relief

---

[4] Plaintiff cited a Louisiana appellate court decision where an employer sued its former employee for violating various restrictive covenants in favor of the plaintiff company. *CDI Corp. v. Hough*, 9 So.3d 282, 293 (La. App. 1st Cir. 2009. Although the former employee became principal and part owner of a new company, the court enforced the former employee's restrictive covenant against the former employee's new company. *Id.* In *CDI Corp.*, however, the former employer sued the actual person with whom it had an agreement. *Id.* That circumstance is not present here.

14

against Williamson as to the challenged claims.

### 4) *Unjust Enrichment*

Plaintiff alleged that Robertson engaged in a practice of failing to pay People Source employees their earned commissions to support her false assertions that People Source was suffering from financial difficulties. (1st Amend. Compl., ¶ 150-154). By so doing, Robertson increased the apparent profitability of the Louisiana offices, which caused her to receive higher bonuses that she was not entitled to. *Id*. People Source seeks to recover damages for unjust enrichment to the extent that Robertson was enriched, or that People Source was impoverished, whichever is less. *Id*., ¶ 157.

Under Louisiana law, the remedy of unjust enrichment is subsidiary in nature, and is not available if the law provides another remedy. La. Civ. Code Art. 2298; *Walters v. MedSouth Record Mgmt., LLC*, 38 So.3d 243, 244 (La. 2010) (citation omitted). When there is a rule of law directed to an issue, an action for unjust enrichment may not be used to defeat the purpose of the rule. *Board of Sup'rs of Louisiana State University v. Louisiana Agr. Finance Authority*, 984 So.2d 72, 81 (La. App. 1st Cir. 2008) (quoting *Carriere v. Bank of Louisiana*, 702 So.2d 648, 657 (La. 1996)). Unjust enrichment applies to fill a gap in the law where no express remedy is available. *Id*. (citations omitted).

Movants contend that People Source has other available remedies, such as breach of contract, and therefore, the unjust enrichment claim should be dismissed. People Source responded that it is entitled to plead its unjust enrichment claim in the alternative.

The court is not persuaded on the present record and briefing that People Source has an express remedy available against Robertson for her receipt of unearned bonuses that were derived from her improper withholding of commissions to other employees. It is not clear that this

conduct is prohibited by her employment agreement. While it may turn out that People Source has another remedy that governs the instant situation, movants have not established same.

       *5)     Employee and Customer Solicitation*

In their prayer for relief, movants seek dismissal of all claims based upon solicitation of People Source's employees. Movants, however, did not discuss this basis for dismissal in the motion to dismiss section of their brief. Statements elsewhere in their brief suggest that movants contend that they no longer were subject to any non-solicitation provisions contained in any agreements with People Source, and that once their affiliation with People Source ended, they were at liberty to do as they pleased.

In response, People Source maintains that it does not need a written agreement to challenge defendants' solicitation of its employees and customers because a non-solicitation or confidentiality agreement is not an element of a claim under the Louisiana Uniform Trade Secrets Act ("LUTSA"). Indeed, "[e]ven in the absence of a contract not to disclose confidential information, an agent has a duty not to use or communicate information given to him in confidence in competition with or to the injury of the principal . . ." *Johnson Controls, Inc. v. Guidry*, 724 F.Supp.2d 612, 625–26 (W.D. La.2010) (citation omitted).

In short, movants have not demonstrated that People Source fails to state a claim for relief stemming from defendants' solicitation of its employees and clients.

**III.    Hearing before Trial**

Rule 12(i) provides that "[i]f a party so moves, any defense listed in Rule 12(b)(1)-(7) – whether made in a pleading or by motion – and a motion under Rule(c) must be heard and decided before trial unless the court orders a deferral until trial." Fed.R.Civ.P. 12(i). Rule 12(i), however, does not require the court to entertain oral argument. *United States v. Leugers*,

16

No. 16-0614, 2016 WL 8135285, at *1 (S.D. Ohio Dec. 1, 2016), R&R adopted, 2017 WL 416231 (S.D. Ohio Jan. 3, 2017).

Accordingly, to the extent that movants seek a decision on their Rule 12(b) motion prior to trial, the request is granted. Insofar, as they seek oral argument on their underlying motion(s), the request is denied.

## Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that movants' motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 31] be GRANTED-IN-PART, and that plaintiff's claims against defendant, Wayne Williamson, for specific performance and breach of contract only, be DISMISSED, WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that movants' motion to dismiss [doc. # 31] otherwise be DENIED.

IT IS FURTHER ORDERED that movants' motion to strike [doc. # 31] is DENIED.[5]

IT IS FURTHER ORDERED that movants' motion for hearing [doc. # 31] under Rule 12(i) is GRANTED-IN-PART and DENIED-IN-PART, as detailed in the body of the decision.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any

---

[5] As this motion is not excepted within 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this order is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

17

objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 15th day of July, 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

`