UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

PEOPLE SOURCE STAFFING                  CASE NO.  3:19-CV-00430
PROFESSIONALS LLC

VERSUS                                  JUDGE TERRY A. DOUGHTY

ANNA ROBERTSON ET AL                    MAG. JUDGE KAYLA D. MCCLUSKY

<u>**MEMORANDUM RULING**</u>

Before the Court is a Motion for Summary Judgment [Doc. No. 93] filed by Shauna Bradley ("Shauna").  An Opposition [Doc. No. 100] was filed by People Source Staffing Professionals, LLC ("People Source") on April 9, 2021. A Reply [Doc. no. 107] was filed by Shauna on April 20, 2021.

For the reasons set forth herein, Shauna's Motion for Summary Judgment is GRANTED.

## I.      BACKGROUND AND PROCEDURAL HISTORY

On April 5, 2019, People Source filed a Complaint and Request for Preliminary and Permanent Injunctive Relief [Doc. No. 1] against Anna Robertson ("Anna"), Wayne Williamson ("Wayne"), Kathy Williamson ("Kathy"), Shauna Bailey ("Shauna")[1], and Will Source, Inc. ("Will Source").  The Complaint was amended on May 17, 2019 [Doc. No. 24], and on December 27, 2019 [Doc. No. 66].  In the Second Amended Complaint, Williamson Consulting Group, Inc. ("Williamson Consulting") was added as a defendant.[2]

People Source alleges that on February 1, 2016, they acquired two locations in Monroe and Ruston, Louisiana, from Diversity One, Inc. ("Diversity One"), owned by Defendants, Wayne and Kathy. People Source is in the business of providing temporary staffing for their employer

---

[1] Shauna Bailey was later clarified to be Shauna Bradley.
[2] Williamson Consulting was dismissed on March 20, 2020 [Doc. No. 76].

customers.  People Source alleges it employs approximately 10,000 temporary staff employees, with its corporate office in Oklahoma City, Oklahoma, and additionally has eleven (11) offices located throughout Oklahoma, Arkansas, Tennessee, and Louisiana.

People Source's lawsuit resulted from a "mass resignation" by People Source employees on March 15, 2019.  People Source alleges that the Defendants conspired to set up and actually did set up Will Source, which directly competes with People Source.  People Source also alleges that Anna was an Area Manager for the Louisiana People Source offices in Monroe and Ruston and was later promoted to Regional Vice-President; that Wayne signed a Consulting Agreement with People Source; that Kathy was an employee of People Source who had signed an Employment Agreement; and that Shauna was an employee of People Source who signed a Non-Compete and Non-Solicitation Agreement.  Further, People Source alleged that Will Source was an entity set up by the other Defendants to directly compete with People Source in the temporary staffing business.

People Source further alleged the defendants used the People Source trade secrets and other confidential information in their attempt to compete with People Source's temporary staffing business in Louisiana.  People Source asks for a temporary and permanent injunction against the Defendants.  People Source sets forth eight (8) additional causes of actions against the Defendants: (1) specific performance against Anna, Wayne, and Shauna;  (2) breach of contract against Kathy, Wayne and Shauna; (3) a violation of the Louisiana Uniform Trade Secrets Act ("LUTSA") against all Defendants; (4) a violation of the Louisiana Unfair Trade Practices Act ("LUTPA") against all Defendants; (5) unjust enrichment against Anna; (6) breach of fiduciary duty against Anna and Shauna; (7) defamation against all Defendants; and (8) conspiracy to commit fraud by all Defendants.

On July 24, 2019, a hearing on People Source's Motion for Preliminary Injunction was held [Doc. No. 46].  At the end of the hearing, the Court granted Defendants' Oral Motion to Dismiss the Motion for Preliminary Injunction against Anna, Kathy, Wayne, and Will Source.[3]

On July 30, 2019, a Report and Recommendation [Doc. No. 35] was adopted by the Court [Doc. No. 52], and the claims against Wayne for specific performance and breach of contract were dismissed.

Additionally, all claims against Williamson Consulting were dismissed, per joint motion, on March 23, 2020 [Doc. No. 77].

The case is set for trial by jury on July 12, 2021 [Doc. No. 88].  All remaining Defendants have filed Motions for Summary Judgment [Doc. Nos. 93 and 94].

## II.     LAW AND ANALYSIS

Shauna has filed a Motion for Summary Judgment [Doc. No. 93] as to all of People Source's claims against her.  The specific claims by People Source against Shauna are: (1) specific performance; (2) breach of contract; (3) LUTSA; (4) LUTPA; (5) breach of fiduciary duties; and (6) conspiracy to commit fraud.

### A.  Motion for Summary Judgment

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A dispute about a material fact

---

[3] People Source's motion was reserved against Shauna, who had not been served.  The motion was later dismissed without prejudice against Shauna [Doc. No. 60].

is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Anderson, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." Stahl v. Novartis Pharms. Corp., 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp., 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added).  "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate."

4

Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co., 671 F.3d 512, 517 (5th Cir. 2012) (quoting Anderson, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322–23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

**B. Louisiana Non-Compete and Non-Solicitation Agreements**

Most of the causes of action by People Source against Shauna are the result of a Louisiana Non-Compete and Non-Solicitation Agreement ("Agreement") [Doc. No. 93-4] signed by Shauna on March 3, 2016. Shauna alleges that the Agreement is unenforceable against her.

Therefore, to evaluate Shauna's Motion for Summary Judgment, this Court must first determine the validity of the Agreement.

People Source's Louisiana Non-Compete and Non-Solicitation Agreement has thirteen (13) paragraphs.

Para. 1 Employment and Duties
Para. 2 Employment at Will
Para. 3 Trade Secrets and Confidential Information
Para. 4 Non-Solicitation of Customers
Para. 5 Non-Competition
Para. 6 Non-Solicitation of Employees
Para. 7 Remedies for Breach
Para. 8 Severability
Para. 9 Subsequent Employment
Para. 10 Assessment and Governing Law
Para. 11 Waiver
Para. 12 Entire Agreement
Para. 13 Amendment or Modification

People Source alleges that Shauna has violated Paras. 3-7 of the Agreement. The applicable Louisiana statute for both Non-Compete and Non-Solicitation Agreements is LA. REV. STAT. 23:921(a)(1), which states as follows:

> Every contract or agreement, or provision thereof, by which anyone
> is restrained from exercising a lawful profession, trade or business
> of any kind, except as provided in this section, shall be
> null and void.

Louisiana has long had a strong, public policy disfavoring non-competition agreements between employers and employees. The longstanding public policy of Louisiana has been to prohibit or severely restrict such agreements. Because such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement. SWAT 24 Shreveport Bossier, Inc. v. Bond, 2000-1695 (La. 6/29/01), 808 So. 2d 294, 298.

A non-solicitation agreement is separate and apart from a non-compete agreement. The requirements of LA. REV. STAT. 23:921 apply to non-solicitation agreements, as well as non-compete agreements. To be valid, a non-solicitation agreement must also meet the requirements of LA. REV. STAT. 23:921. Vartech Sys., Inc. v. Hayden, 2005-2499 (La. App. 1 Cir. 12/20/06), 951 So. 2d 247.

LA. REV. STAT. 23:921 provides that any person who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

In the People Source Agreement, Para. 4 prohibits solicitation of customers during Shauna's employment for a period of two years after the termination of her employment with

6

People Source.   The provision is limited to the Louisiana Parishes of Ouachita, Morehouse, Lincoln, Union, Richland, Franklin, and Jackson.

Para. 5 of the People Source Agreement prohibits Shauna from carrying on or engaging in a business similar to that of the "Company Business" during the term of her employment with People Source and for a period of two years following the termination of employment. The provision is limited to the Louisiana Parishes of Ouachita, Morehouse, Lincoln, Union, Richland, Franklin, and Jackson.  Para. 5 additionally provides that Shauna is prohibited from opening a new business or working with an existing competitor.

The phrase "carrying on or engaging in a business" is defined in the Agreement as being "an owner or employee of the new business."

Additionally, the phrase "similar to that of the company's business" is deemed to include the "Company's Business" in the business area as constituted on the date of the Agreement and any other business that People Source may from time to time enter into during the time the Employee is employed with the Company and continues to operate in any business area.

Para. 1 indicates People Source is in the business of recruiting and placing temporary workers with customers, recruiting, placing career or direct hire workers with customers, recruiting and placing career temporary-to-hire workers with customers, recruiting and placing contract workers with customers, and providing payroll services to customers. Para. 1 further lists the industries People Source's business is directed toward as clerical, administrative, sales, technical, banking, medical, accounting, information technology, manufacturing, and legal.  It is also limited to the Louisiana Parishes of Ouachita, Morehouse, Lincoln, Union, Richland, Franklin, and Jackson.

Para. 6 involves the non-solicitation of employees' provision.  It states that Shauna shall not, during her employment, or for a period of two years after the termination of her employment, directly or indirectly recruit, solicit, or otherwise influence any employee of People Source to discontinue such employment, or employ, seek to employ, or cause any competitor of People Source to employ or seek to employ any employee of People Source.  Para. 6 does not have a parish limitation.

In order to be a valid non-solicitation/non-competition agreement, three requirements must be met: (1) a two-year maximum duration, (2) a list of the areas in which the former employee is restrained, and (3) competition between the former employee and employer.  Env't Safety & Health Consulting Servs., Inc. v. Fowler, 2019-0813 (La. App. 4 Cir. 3/11/20), writ denied, 2020-00729 (La. 10/6/20), 302 So. 3d 528.

Additionally, the language of a non-competition agreement shall not be overly broad as to the type of work prohibited.  The employer is only entitled to keep former employers from competing with the employer's actual business.  *Paradigm Health System, LLC v. Faust*, 218 S.3d 1068 (La. App. 1st Cir. 2017).

### 1.  Non-Competition Agreement

The non-competition provision (Para. 5) has a two-year limitation following the termination of employment and lists the specific parties.  However, this portion of the agreement has two problems: (1) it extends the provision to "employees" of competing businesses, and (2) it extends its provisions to People Source's business[4] on the date the agreement is signed, and to other businesses that People Source "from time to time" enters into during the time Shauna is an employee.

---

[4] People Source's business is defined in Para. 1.

In <u>SWAT 24 Shreveport Bossier, Inc.</u>, 2000-1695 La. 6/29/01, the Supreme Court of Louisiana specifically held that the language in LA. REV. STAT. 23:921 C. allowing an employer to have an employee agree to refrain from "carrying on or engaging in a business similar to that of the employer" only applies to employees that form their own business to compete with their former employer, and not to former employees who become an employee of a competing company.

In accordance with this opinion, the provisions in People Source's Non-Competition Agreement, which prohibit Shauna from becoming an employee of a competitor, are null and void and severed from the agreement.

As to the definition of People Source's business in Paragraph 5(c), the definition not only extends the definition of the "Company Business" to the definition of the Company Business in Para. 1 of the Agreement, but also extends the business to "any other business that the employer from time to time enters into during the time that Employee is an employee of the Company and continues to operate in any business area."

This provision would extend the aforementioned "Company Business" to other businesses that People Source may or may not have entered into during the time Shauna was employed.  It is impossible to tell what these businesses could have been, and this provision is overbroad.  An overly broad definition of the employer's business in a non-competition agreement renders the entire non-competition agreement unenforceable.  <u>Environmental Safety & Health Consulting Services, Inc.</u>, 2019-0813 La. App. 4 Cir. 3/11/20; and <u>Bank of Louisiana v. Mmahat, Duffy, Opotowsky & Walker</u>, 608 So. 2d 218, 220 (La. Ct. App. 1992), <u>writ denied,</u> 613 So. 2d 994 (La. 1993), writ denied 610 So. 2d 801 (La. 1993).

Therefore, the entire Non-Competition Agreement in Para. 5 cannot be enforced against Shauna.

**2.  Non-Solicitation of Employees**

In Para. 6, the Non-Solicitation of employees provision states that during Shauna's employment, and for a period of two years after the termination of Shauna's employment, she shall not directly or indirectly recruit, solicit or otherwise influence any employee of People Source to discontinue their employment or employ, seek to employ, or cause any competitor of People Source to employ or seek to employ any employee of People Source.  The provision does not list the parishes or municipalities to which it applies.

The requirements of LA. REV. STAT. 23:921 apply to non-solicitation agreements.  Failure to contain the geographical limits in a non-solicitation agreement results in the non-solicitation clause being unenforceable.  Even if the geographical limits are contained in other provisions of the agreement, the provision is invalid because non-solicitation agreements must be able to stand on their own.  Vartech Systems, Inc., 2005-2499 La. App. 1 Cir. 12/20/06.

Therefore, the Non-Solicitation of Employees Section of the People Source Agreement is unenforceable against Shauna.

**3.  Non-Solicitation of Customers**

Para. 4 of the People Source Agreement prohibits Shauna during her employment and two years after termination of her employment with People Source from directly or indirectly contacting, soliciting, calling on, or making proposals to do business with any customer or temporary worker of People Source on behalf of a competitor or on Shauna's own behalf in a competing business.  The prohibited parishes listed are Ouachita, Morehouse, Lincoln, Union, Richland, Franklin, and Jackson.

Shauna argues the definition of the Company's Business in Para. 1 is overbroad.  Para. 1 states People Source is in the business of recruiting and placing temporary workers with customers,

recruiting, and placing career or direct hire workers with customers, recruiting, and placing contract workers with customers, and providing payroll services to customers.  The Company Business of People Source is directed toward, but not limited to the industries/positions of clerical, administrative, sales, technical, banking, medical, accounting, information technology, manufacturing, and legal.  Shauna specifically argues that the language is overbroad.  This Court agrees in part and disagrees in part.  The language that People Source uses in Para. 1 to state that it is in the business of recruiting and placing temporary workers with customers, recruiting, and placing career or direct hire workers with customers, and placing contract workers with customers is not overbroad.  However, when People Source adds the language "providing payroll services to customers" this language is overbroad, especially in light of the "Company Business" at People Source including but not limited to industries/positions of clerical, administrative, sales, technical, banking, medical, accounting, information technology, manufacturing and legal.

In its First Amended Complaint, People Source describes itself as "in the highly competitive business of providing temporary staffing for People Source's employer customers, as well as providing direct hire staffing placement of employers for People Source's employment customers." [Doc. No. 24, Para. 12].  Shauna, who was an "account manager" would be prohibited from performing payroll services for employers in any of the above industries.

In Daiquiri's III on Bourbon, Ltd. v. Wandfluh, 608 So. 2d 222 (La. Ct. App. 1992), writ denied sub nom. Daiquiri's III on Boubon, Ltd. v. Wandfluh, 610 So. 2d 801 (La. 1993), the Non-Competition Agreement prevented the employee from "selling frozen drinks for consumption by the general public."  In finding this provision overbroad, and the agreement null and void, the Court stated the terminology could prevent the employee from entering into any business that sells

any type of frozen drinks, which could include yogurt, ice cream, malts, or any number of products not sold by *Daiquiri's III.*

Similarly, the broad language in People Source's Agreement could prohibit Shauna from performing payroll services for most major industries.  The provision is overbroad, and the Non-Solicitation of Customers provision is null and void.

### 4.  Trade Secrets and Confidential Information Provisions

Para. 3 of the People Source Agreement lists various confidential information of its business and prohibits Shauna from divulging any of People Source's confidential information to any other person, firm or entity or use or permit the use of any of the confidential information in violation of the Agreement.  The provision also protects People Source from Shauna's disclosure or use of any intellectual property developed by People Source, or by Shauna, when employed with People Source.

These provisions are not controlled by LA. REV. STAT. 23:921 and are valid and enforceable.  Even though portions of the entire agreement are invalid, the severability clause in Para. 8 allows Para. 4 to be enforced.  Therefore, the Trade Secrets and Confidential Information Clause found in Para. 3 is enforceable against Shauna.

### C.  Causes of Action Against Shauna Bradley

In its original and amended Complaints, People Source alleges against Shauna the causes of actions, of (1) defamation; (2) violation of the Louisiana Uniform Trade Secrets Act ("LUTSA");  (3) violation of the Louisiana Unfair Trade Practices Act ("LUTPA"), (4) breach of

fiduciary duties; (5) specific performance; (6) breach of contract; and (7) conspiracy to commit fraud.

In the Declaration of Shauna [Doc. No. 93-3], Shauna stated after People Source and Diversity One, Inc. merged she continued to serve as account manager.  She stated she never received the People Source Employee Handbook.  Shauna admitted signing the Louisiana Non-Compete and Non-Solicitation Agreements on March 3, 2016.

Shauna further declared that she resigned from People Source on March 15, 2019.  She declared she has never been employed by Will Source and has never been employed in any business competing with People Source.  She declared she remained unemployed after her resignation from People Source until she worked for Steward Health Care d/b/a Glenwood Regional Medical Center from June 2019 until January 2020.  On January 27, 2020, Shauna begin working for Pettus Office Products and has held an outside sales position since that time.  Shauna states Pettus Office Products is an independent supplier and dealer of office products and is not a competitor of People Source.

Shauna denies that she has violated the People Source Agreement since resigning from People Source.  In her Motion for Summary Judgment, Shauna maintains summary judgment should be granted in her favor because People Source has no evidence to prove its allegations against her.

In People Source's Opposition to Shauna's Motion, People Source alleges it has the following evidence against Shauna to defeat summary judgment[5]: (1) Scott Albritton -Declaration of Scott Albritton [Doc. No. 100-6] stated that on March 14, 2019, Shauna told Albritton that the

---

[5] A pending Motion to Strike [Doc. No. 102] has also been adopted by Shauna seeking to strike some of this evidence. Since this Court finds Shauna is entitled to summary judgment, even when considering this evidence, a resolution of the Motion to Strike is not necessary to resolve this motion.

plan to form Will Source had been the topic of conversation between Shauna and Anna since the summer of 2018.  Additionally, Shauna told Albritton that she and Anna had discussed the plan to form Will Source in November and December of 2019.  Shauna told Albritton that Will Source would be operational in March 2019.   (2) <u>Courtney Keefover</u> - Declaration of Courtney Keefover [Doc. No. 100-7] declared that on February 4, 2019, Anna sent an email [Doc. No. 100-8] to Keefover, Shauna and Sunni Lawson, attaching a lot of People Source's temporary employment candidates whose assignment at Petrin Corporation (a former People Source Customer) had ended some time between May 2018 and February 1, 2019.

Additionally, Keefover received a text message [Doc. No. 100-10] from Shauna on March 15, 2019, at 9:02 a.m. in a group chat titled "Shut down pimps," which included Keefover, Anna, Sunni Lawson, and Sarah Chestnut.  The text referred to a plan to get with a person named "Kevin" next week, who Keefover testified was Kevin Cupia, a senior manager at Graphic Packaging International, LLC.   Keefover further testified that Shauna told her that she had been in negotiations with Graphic Packaging to get a service agreement signed with Will Source.

(3) <u>Emmett Reeves</u> - Declaration of Emmett Reeves, [Doc. No. 100-11] declared that on February 18, 2019, he had been placed at Murphy Brothers Construction, LLC for a job, by (he thought) People Source.  On March 14, 2019, he was told to pick up his Murphy Brothers' check at a new People Source location on Stubbs Avenue in Monroe.

When he went to the location, he found the office was the office of Will Source, not People Source.  While he was in the Will Source office, Shauna provided him with a Will Source staffing check dated March 14, 2019, in the amount of $464.84.  Reeves was also asked by Shauna to fill out an application providing his personal information so that Will Source could contact him to

notify him of any potential future job opportunities.   A copy of the check stub referenced is attached as [Doc. No. 100-12].

### 1.  Defamation Claim

In its Opposition to Shauna's Motion for Summary Judgment, People Source does not brief this issue.  To prove a claim of defamation the plaintiff must prove defamatory words, publications, falsity, malice, and injury.  The absence of a single element out of these five elements causes the action to fail.  Associated Pro. Educators of Louisiana v. Louisiana Fed'n of Tchrs., 43,214 (La. App. 2 Cir. 4/30/08), 981 So. 2d 242, 244, writ denied, 2008-1304 (La. 9/19/08), 992 So. 2d 928.

Shauna is entitled to summary judgment on this claim.

### 2.  Louisiana Uniform Trade Secrets Act (LUTSA)

A claim under LUTSA (LA. REV. STAT. 51:1431), requires the plaintiff to establish (1) a trade secret existed, and (2) that the trade secret was misappropriated by an employee.  Innovative Manpower Sols., LLC v. Ironman Staffing, LLC, 929 F. Supp. 2d 597 (W.D. La. 2013). Additionally, courts have also required plaintiffs to prove (3) that the receiving party wrongfully misappropriated the information to the plaintiff's detriment or caused damages.  Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc., 220 F.3d 396 (5th Cir. 2000).

People Source has not proven any of these elements.  Not only has People Source failed to identify a trade secret misappropriated by Shauna, they have not proven Shauna wrongfully misappropriated the information or that damages were caused to People Source.

The only evidence even close on this claim is the declaration of Courtney Keefover, who testified that on February 4, 2019, Anna sent to Keefover, Shauna and Sunni Lawson an email attaching a list of People Source's temporary employment candidates, whose assignment at Petrin Corporation had ended between May 2018 and February 1, 2019.  There has been no evidence

prescribed by People Source that this was a trade secret.  There has certainly been no evidence that Shauna misappropriated this, or any other trade secret to People Source's detriment.

Shauna is also entitled to summary judgment as to this claim.

### 3. Breach of Fiduciary Duty and Louisiana Unfair Trade Practices Act (LUTPA)

As found in Elliott Co. v. Montgomery, No. CV 6:15-02404, 2016 WL 6301042, at *6 (W.D. La. Sept. 28, 2016), report and recommendation adopted, No. CV 15-02404, 2016 WL 6301106 (W.D. La. Oct. 26, 2016), "Thus, the question of breach of fiduciary duty or loyalty as an employee collapses into the question of whether the employee's actions constitute unfair trade practices."

LUTPA, (LA. REV. STAT. 51:1401, et seq), makes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful.  Newton v. Brenan, 14-423 (La. App. 5 Cir. 12/16/14), 166 So. 3d 285, 289.  Acts that constitute unfair or deceptive practices are not specifically defined in the statute and are instead determined on a case-by-case basis.  Id.

Under LUTPA, conduct is considered unlawful when it involves fraud, misrepresentation, deception, breach of fiduciary duty, or other unethical conduct.  Creative Risk Controls, Inc. v. Brechtel, 01-1150 (La. App. 5 Cir. 4/29/03), 847 So. 2d 20, 24–25, writ denied, 2003-1769 (La. 10/10/03), 855 So. 2d 353.

As to People Source's claim against Shauna, all of the evidence presented against Shauna occurred during her employment with People Source, prior to her resignation on March 15, 2019. Specifically, the Declaration of Scott Albritton shows that Shauna was aware of the plan to form Will Source, the Declaration of Courtney Keefover shows the email sent by Anna to Shauna on

February 4, 2019, and shows Shauna's involvement and her alleged negotiations with Kevin Cupia of Graphic Packaging to get a service agreement with Will Source signed by Graphic Packaging.

Shauna argues that the range of prohibited practice under LUTPA is extremely narrow and that only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct are actionable. Rincon v. Owens Collision & Repair Serv. Ctr., LLC, 2018-0383 (La. App. 1 Cir. 9/21/18).  Further, Shauna maintains LUTPA does not provide an alternate remedy for simple breach of contract and that there is a great deal of difference between a breach of contract claim and the egregious behavior the statute prohibits.

Shauna further argues that as a matter of law, an employee who has not taken trade secrets can prepare to compete against their employer without breaching fiduciary duties or violating LUTPA.

This Court finds that the evidence People Source has against Shauna is not sufficient for a violation of the LUTPA.  People Source has produced no evidence that Shauna had anything to do with Will Source after she resigned on March 15, 2019.  There is no evidence that Shauna was employed by, owned an interest in, or benefitted in any manner from Will Source.  Additionally, there is no evidence that Shauna misappropriated or used any of People Source's trade secrets and/or confidential information after she left her employment with People Source on March 15, 2019. The LUPTA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise. The range of prohibited practice under LUPTA is extremely narrow. LUPTA is not an alternative remedy for simple breach of contract claims. First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc., 178 F. Supp. 3d 390 (E.D. La. 2016).

Neither does this Court find that Shauna had a fiduciary duty to People Source. An employee owes his employer a duty to be loyal and faithful to the employer's interest and business.

He is duty-bound to not act in opposition to the interest of the employer. However, this duty of allegiance does not rise to the level of a fiduciary duty unless the employee is also an agent or mandatory of his employer. <u>Innovative Manpower Solutions, LLC</u>, 929 F. Supp. 2d at 609.

Shauna was an account manager for People Source. She did not have a special duty as an agent or mandatory for People Source. Shauna is entitled to summary judgment on People Source's claim of breach of fiduciary duty and violation of the LUTPA.

### 4. Specific Performance and Breach of Contract

People Source asks for specific performance against Shauna as to her obligations to People Source, which are the obligations set out in the Louisiana Non-Compete and Non-Solicitation Agreements ("Agreement") signed by Shauna on March 3, 2016. People Source also alleges breach of contract against Shauna based upon said Agreement. People Source specifically alleges Shauna violated the Agreement by disclosing People Source's proprietary business information or trade secrets, soliciting People Source's customers, soliciting People Source's employees, and by competing with People Source.

Both of these causes of action depend upon the enforceability of People Source's Agreement. Additionally, there is no evidence of Shauna disclosing People Source's proprietary business information or trade secrets. There is also no evidence that Shauna competed with People Source. Therefore, Shauna is entitled to summary judgment as to these specific claims.

As to the other claims, this Court has previously found People Source's Agreement null and void as to the Non-Competition Agreement (Para. 5), the Non-Solicitation of Employees provision (Para. 6), and the Non-Solicitation of Customers provision (Para. 4).

These encompass all of People Source's claims for specific performance and for breach of contract. Therefore, Shauna is also entitled to summary judgment on People Source's claims of specific performance and breach of contract.

### 5. Conspiracy to Commit Fraud

People Source's last claim against Shauna alleges she was involved in a conspiracy to commit fraud. A conspiracy is addressed in La. Civ. Code Ann. art. 2324. The actionable element in a claim is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part. The plaintiff must also establish that there was an agreement as to the intended outcome or result. Butz v. Lynch, 97-2166 (La. App. 1 Cir. 4/8/98), 710 So. 2d 1171, writ denied, 98-1247 (La. 6/19/98), 721 So. 2d 473.

The only evidence People Source has as to Shauna is the Declaration of Scott Albritton (that Shauna knew of plans to form Will Source since the summer of 2018); the Declaration of Courtney Keefover (the February 4, 2019 email sent by Anna, and the March 15, 2019 text message that Shauna sent); and the Declaration of Emmett Reeves (he was told Will Source was People Source, paid with a Will Source check on March 14, 2019, and that he was asked by Shauna to fill out a Will Source application). The actionable tort alleged is fraud. The alleged fraud was a conspiracy to defraud People Source by solicitation of its employees and/or customers and/or forcing People Source to sell its Louisiana locations to Will Source for a discount.

The evidence as to Shauna falls woefully short. Although Shauna knew of the plan to form Will Source, there is no evidence that Shauna intended to force People Source to shut down and/or sell to Will Source. There is no evidence Shauna even worked for Will Source after she resigned from People Source.

The Agreement Shauna signed was null and void as to Non-Competition with People Source, solicitation of customers or solicitation of employees.   There is no evidence Shauna appropriated any of People Source's confidential information or trade secrets, no testimony, emails, text, or correspondence that Shauna had any intention of forcing People Source to sell out its Louisiana operations to Will Source.

Therefore, Shauna is additionally entitled to summary judgment as to this claim.

## III.    CONCLUSION

For the reasons set forth herein, Shauna Shauna's Motion for Summary Judgment [Doc. No. 93] is GRANTED.

MONROE, LOUISIANA, this 19th day of May, 2021.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE